Douglas S. Gilliland, Esq.  (SBN 157427)
THE GILLILAND FIRM
402 West Broadway, Suite 1760
San Diego, California 92101
Telephone:  (619) 878-1580
Facsimile:   (619) 878-6630
doug@thegillilandfirm.com

Attorneys for Plaintiff JANE DOE

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD FISCHER, an individual, COUNTY OF SAN DIEGO, a municipal corporation, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.:  **'19CV1633 BEN NLS**<br><br>**COMPLAINT FOR:**<br><br>1. Unreasonable Seizure and Intrusion on Bodily Integrity<br>   42 U.S.C. § 1983<br><br>2. *Monell* Liability<br>   42 U.S.C. § 1983 |

COMES NOW, Plaintiff JANE DOE, an individual, by and through her attorneys of record, THE GILLILAND FIRM, by Douglas S. Gilliland, Esq., and alleges as follows:

## I.
## JURISDICTION AND VENUE

1. The United States District Court, in and for the Southern District of California, has original jurisdiction over the civil rights causes of action pled herein under 42 U.S.C. section 1983, and pursuant to 28 U.S.C. section 1343(a)(3), and by the federal questions raised therein pursuant to 28 U.S.C. section 1331. Venue of this controversy is proper in the Southern District of California pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events, acts and/or omissions giving rise to the claims herein occurred in the Southern District of California.

## II.
## GENERAL ALLEGATIONS

2. At all times relevant to this Complaint, Plaintiff JANE DOE, was an individual residing in San Diego County, California.

3. At all times relevant to this Complaint, Defendant RICHARD FISCHER was an individual residing in San Diego County, California and working in the course and scope of his employment as a deputy sheriff with the San Diego Sheriff's Department.

4. At all times relevant to this complaint, Defendant COUNTY OF SAN DIEGO was a municipal corporation, incorporated in 1850, by authority of the California Constitution and laws of the state of California, and is responsible for the operation of the San Diego Sheriff's Department and the conduct of its officers.

5. Plaintiff is ignorant of the true names, identities, and capacities of DOES 1 through 10, inclusive. Therefore, plaintiff sues these defendants under the fictitious designations of DOE 1 through 10. Plaintiff will amend this Complaint

once their identities and facts giving rise to their liability have been ascertained.

## III.
## INTRODUCTION

6.      JANE DOE is one of 21 victims of San Diego sheriff deputy RICHARD FISCHER.  Defendant FISCHER is alleged to have sexually assaulted these 21 women between November 24, 2015 and October 6, 2017.  The San Diego District Attorney's Office filed felony charges against Defendant FISCHER on February 22, 2018, and a second set of charges on August 16, 2018.  Deputy FISCHER is currently on bond awaiting his September 9, 2019 trial.

## IV.
## FACTS

7.      On September 9, 2017, at approximately 2:30 a.m., Plaintiff JANE DOE finished her shift as a cocktail waitress in north county, San Diego.  She had a few alcoholic drinks and then decided to drive home.  On her way home, JANE DOE lost control of her car in a commercial area and crashed into two parked cars.  There were no other people involved in the accident as the parked cars were empty.

8.      JANE DOE got scared because she had been drinking and crashed into two parked cars.  She also did not have a valid driver's license and she knew there was an outstanding warrant for her arrest.  She left the scene of the accident on foot.  JANE DOE then called a male friend to come get her.  The friend came and drove JANE DOE toward her residence in Escondido.  The friend had another male friend in the front passenger seat, so JANE DOE rode in the back seat.

9.      As they approached JANE DOE's residence, they saw a few black and white Escondido police cars parked outside.  JANE DOE and her friend passed the police cars and kept driving.  The Escondido police cars pulled out, followed JANE DOE and her friend and pulled them over.

10.      An Escondido police officer asked JANE DOE if she was driving the car that struck two parked cars.  JANE DOE said that she was.  The officer asked

why she crashed her car. JANE DOE responded that she was "drunk."

11. The Escondido police officer handcuffed JANE DOE and put her in the back of his patrol car. He then told JANE DOE they had to wait for San Diego sheriff personnel to arrive.

12. After about 15 minutes, JANE DOE saw a San Diego sheriff deputy, who would turn out to be Defendant FISCHER, arrive in his full San Diego sheriff uniform, driving a fully marked San Diego sheriff patrol car. By this time, Defendant FISCHER had sexually assaulted approximately 19 other women while on duty as a San Diego sheriff deputy. The first documented assault occurred on November 24, 2015. The first complaint to the COUNTY OF SAN DIEGO was made on May 4, 2016 (16 months before this encounter between JANE DOE and Deputy FISCHER).

13. Deputy FISCHER transferred JANE DOE in handcuffs to the back seat of Defendant FISCHER's patrol vehicle. Defendant FISCHER buckled JANE DOE's seatbelt. Defendant FISCHER then told JANE DOE that he was going to drive her back the scene of the accident. JANE DOES was 24 years old, five feet tall, and weighed 95 pounds.

14. Defendant FISCHER asked JANE DOE if she had been drinking. She admitted that she had. As he drove JANE DOE back to the accident scene, he asked JANE DOE if either of the two males in the car with her were her boyfriend. JANE DOE answered that they were not. Defendant FISCHER then responded, "Good, because you could do much better than them" or words to that effect.

15. When Defendant FISCHER and JANE DOE got to the accident scene, she saw other marked San Diego sheriff cars already parked there. JANE DOE was taken out of Defendant FISCHER's patorl car and was able to see her car which was a total loss. The damage to the other cars was significant too.

16. Another San Diego sheriff deputy approached JANE DOE and Deputy FISCHER. He asked JANE DOE for her driver's license and proof of

THE GILLILAND FIRM
402 West Broadway, Suite 1760
San Diego, California 92101
TEL (619) 878-1580  FAX (619) 878-6630

insurance. JANE DOE provided her proof of insurance. She told the officer that she did not have a valid driver's license. That deputy asked JANE DOE if she had been drinking. Again, JANE DOE admitted that she had been drinking. JANE DOE also told the San Diego sheriff deputies that there was an outstanding warrant for her arrest.

17. After approximately 20 minutes at the scene, Defendant FISCHER asked JANE DOE if she wanted a ride home. JANE DOE was confused when Defendant FISCHER offered her a ride home because she told the officers she had been drinking and driving, she crashed into two parked cars, fled the scene of the accident, did not have a valid driver's license, her friend that picked her up got arrested, and there was an outstanding warrant for her arrest. JANE DOE assumed she was going to jail.

18. JANE DOE accepted Deputy FISCHER's offer for ride home. She got into the back of Deputy FISCHER's patrol car with her hands cuffed behind her back. Deputy FISCHER buckled her seatbelt. As they drove toward JANE DOE's residence, Defendant FISCHER asked JANE DOE how old she was. JANE DOE responded that she had just turned 24 years old. Deputy FISCHER asked if she had gotten a birthday kiss. JANE DOE responded, "What?" Then Deputy FISCHER asked JANE DOE if she wanted a birthday kiss. JANE DOE did not respond. JANE DOE became more confused. JANE DOE thought to herself, "What the he** is going on?"

19. Deputy FISCHER parked at JANE DOE's residence. He got out of the patrol car and opened the rear door where JANE DOE was sitting. He then said, "Here comes your favorite part," or words to that effect. He leaned across her to unbuckle her seatbelt. Deputy FISCHER then started rubbing JANE DOE's legs as she sat handcuffed in the back of Deputy FISCHER's patrol car. JANE DOE was wearing very short denim shorts. Therefore, Deputy FISCHER was able to rub the skin of JANE DOE's upper thighs on both legs. As Deputy FISCHER

rubbed JANE DOE's thighs, he looked at her and said, "Your legs are really soft" or words to that effect. JANE DOE was still handcuffed and could not stop Deputy FISCHER's advances.

20. Deputy FISCHER then leaned into his patrol car and put his face so close to JANE DOE's that she could feel his breath on her face. He then told JANE DOE that she could kiss him if she wanted to. She pulled her face as far back from Deputy FISCHER's as she could because she did not want to kiss or be kissed by Deputy FISCHER.

21. Deputy FISCHER then moved back and helped JANE DOE out of his patrol car. Deputy FISCHER then stood behind JANE DOE as if he was going to remove her handcuffs. However, instead of taking them off, Deputy FISCHER started rubbing JANE DOE's butt.

22. As the handcuffs were still on, Deputy FISCHER then reached between JANE DOE's legs and rubbed her genital area. As Deputy FISCHER touched her genital area, she moved forward in an effort to get him to stop.

23. Deputy FISCHER then took the handcuffs off. He asked if anyone was home. Terrified, JANE DOE responded that her parents were waiting up for her and started walking quickly toward her residence. Deputy FISCHER said, "Next time we meet, I hope it is under better circumstances."

## V.

## FIRST CAUSE OF ACTION

**Unreasonable Seizure and Intrusion on Bodily Integrity – 42 U.S.C. § 1983**

**[Against RICHARD FISCHER]**

Plaintiff JANE DOE incorporates by reference all prior allegations pled in this complaint.

24. Defendant FISCHER, acting under color of state law, deprived JANE DOE of her clearly established federal constitutional right under the Fourth Amendment to the Constitution of the United States of America to be free from

1  unreasonable seizure and intrusion on her bodily integrity caused by engaging in
2  the sexual misconduct, including making sexually charged comments such as
3  "doing better" than the two males that she was riding with, inquiring about a
4  "birthday kiss," offering a birthday kiss, offering to allow JANE DOE to kiss him,
5  stating this is your favorite part, commenting on the softness of JANE DOE's legs,
6  coupled with the physical acts of Deputy FISCHER putting his face so close to
7  JANE DOE's face that she could feel him breathing, rubbing JANE DOE's legs,
8  touching her butt, rubbing between her legs, and touching her genital area, for
9  which there is no countervailing governmental interest. This conduct by
10 Defendant FISCHER toward JANE DOE is also an abuse of governmental power
11 and authority that shocks the conscience in violation of the substantive due process
12 clause of the Fourteenth Amendment to the Constitution of the United States.

13     25.   Defendant FISCHER's unreasonable seizure and intrusion on JANE
14 DOE's bodily integrity in violation of the Fourth Amendment, which was also an
15 abuse of governmental authority that shocks the conscience in violation of the
16 Fourteenth Amendment, was the moving force that caused the ultimate injury to
17 JANE DOE including past and future mental and emotional pain and suffering, and
18 emotional distress.

19     26.   The conduct of Deputy FISCHER constituting unreasonable seizure
20 and intrusion on JANE DOE's bodily integrity which was an abuse of
21 governmental authority that shocks the conscience in violation of the Fourth and
22 Fourteenth Amendment justifies the imposition of punitive damages against
23 Deputy FISCHER, to punish him for his conduct, and to deter him from engaging
24 in similar conduct in the future, because the conduct was malicious, oppressive
25 and/or in reckless disregard of JANE DOE's rights. The conduct was malicious
26 because it was accompanied by ill will, spite and/or for the purpose of injuring
27 JANE DOE. The conduct was oppressive because it caused injury and/or damage
28 to JANE DOE and violated JANE DOE's constitutional rights with unnecessary

harshness and/or severity, and it was a misuse and abuse of authority or power by the Deputy FISCHER.  The conduct was with a conscious disregard of JANE DOE's rights because, under the circumstances, it reflected a complete indifference to JANE DOE's safety and/or constitutional rights.

## VI.

## SECOND CAUSE OF ACTION

### *Monell* Liability – 42 U.S.C. § 1983

### [Against the COUNTY OF SAN DIEGO, and DOES 1-10]

Plaintiff JANE DOE incorporates by reference all prior allegations pled in this complaint.

27.     As set forth in greater factual detail below, the COUNTY OF SAN DIEGO had a policy/custom between 2014 and 2018, inclusive, that was intentionally inadequate and implemented to shield the COUNTY from liability for peace officer misconduct, by ignoring and refusing to investigate and respond to citizen complaints.  Under this policy/custom, the COUNTY knowingly failed to investigate claims of peace officer misconduct, failed to adequately supervise and discipline peace officers, failed to timely and adequately perform unbiased investigations, and covered up peace officer misconduct.

28.     This policy/custom is demonstrated, in part, by a woman referred to as K.P. because she is a victim of sexual assault.  On May 4, 2016, K.P. sent a written complaint to the San Diego Sheriff Department's Internal Affairs Unit.  In her complaint, she wrote about the circumstances of her traffic stop by Defendant RICHARD FISCHER.  She wrote that the traffic stop occurred on November 24, 2015.  In part, K.P. wrote,

> "During this incident, Deputy Fischer violated my rights in many ways.  He started my arrest by violating my Fourth Amendment right with both illegal search and seizure which led to him confining me in handcuffs and then taking advantage of me by touching and rubbing

me sexually and inappropriately. . . . Although I haven't filed anything through the court, I do think something should be done. I have no idea how this process works, but I am hoping mostly to find some peace of mind, and attention brought on to the disrespectful, unlawful and sexually demeaning things Officer FISCHER shamelessly put me through."

K.P. concluded her complaint by writing, "Please contact me for more details, it is not fair to be taken advantage of and *he is a predator, not an officer*."

29. K.P. provided two contact phone numbers and an email where she could be reached about her accusation that Deputy FISCHER was a predator. However, the COUNTY did not contact K.P. nor did it start any Internal Affairs investigation at that time.

30. K.P.'s complaint to San Diego Sheriff's Internal Affairs Unit was made 16 months before Defendant FISCHER sexually assaulted JANE DOE. And her incident with Defendant FISCHER occurred approximately 22 months before Defendant FISCHER sexually assaulted JANE DOE.

31. The policy/custom is further shown by an investigation by KPBS. On June 22, 2018, KPBS reporter Claire Trageser was investigating multiple victims' claims that they reported Deputy FISCHER's sexual misconduct to the San Diego Sheriff but never received a response.[1] Some of these women never received a response, while others said they waited for months for a response. Ms. Trageser made a public records act request to the COUNTY OF SAN DIEGO for "[t]he dates all complaints were filed from 2011 through 2018" and "[t]he dates the sheriff's department initially responded to each complaint." On July 2, 2018, a legal advisor in the Sheriff's office denied the request.

---

[1] The San Diego District Attorney's Office reported that half of Deputy FISCHER's victims had called the sheriff's department after they were victimized by Deputy FISCHER.

32. Ms. Trageser made the same request to the San Diego Police Department. The San Diego Police Department offered to provide KPBS with a representative sampling from each year. KPBS agreed and the San Diego Police Department provided those records.

33. KPBS then asked the COUNTY OF SAN DIEGO if they would produce a sampling of the records like the San Diego Police Department had done. The COUNTY OF SAN DIEGO refused. Therefore, on January 22, 2019, KPBS filed a lawsuit against the COUNTY OF SAN DIEGO for release of all the records. As a result, the COUNTY OF SAN DIEGO produced all records from 2014 to 2018 (the COUNTY represented that records are only held for five years, so nothing existed prior to 2014). The COUNTY also paid KPBS's attorney fees of $18,000.

34. The records showed that, out of 425 complaints involving officers, more than 1 in 6 never received a response. KPBS reported that K.P.'s complaint was possibly one of these complaints that never received a response.

35. Dave Myers, a 35 year veteran of the San Diego Sheriff's Department stated that the COUNTY OF SAN DIEGO does not have a consistent system for handling these complaints. Deputy Myers stated that the COUNTY's policy is to "handle the matter at the lowest level possible" which means that a counter clerk could address these complaints. In 2019, Deputy Myers stated the current complaint process is "ripe for abuse."

36. Robert Faigin, the chief attorney for the San Diego Sheriff's Department said the sheriff's department enters the date a complaint against one of its officers is received, but their system did not track or log when the complaint received a response, if any. Mr. Faigin stated that the sheriff's department switched to a new computer system in 2017 so they could begin logging response dates into the computer. Mr. Faigin did not state what month in 2017 that new computer system went into effect.

**COMPLAINT**

37.     This policy/custom by the COUNTY OF SAN DIEGO is deficient because, as the COUNTY intended, it allows very serious complaints to be handled at the lowest possible level, even by counter clerks, and there is no way to track when a response, if any, was made to a complaint.  It allows very serious complaints to go unanswered, not even reaching the Internal Affairs Unit.  Without a uniform system of reviewing and investigating complaints, there was no way to ensure that serious constitutional violations by sheriff deputies, such as those of Deputy FISCHER, are being reviewed to that appropriate supervision and discipline is meted.  That is exactly what happened in this case.

38.     This policy/custom of the COUNTY OF SAN DIEGO caused harm to JANE DOE because a proper system of complaint reporting would have resulted in an Internal Affairs investigation into the complaints, arguably as early as May 4, 2016.  Deputy FISCHER would have either been terminated then, or placed on administrative leave, as he is currently on, which would have saved JANE DOE and other situationally vulnerable women from his abuse of power as a San Diego sheriff deputy.

39.     JANE DOE was sexually assaulted by Deputy FISCHER on September 9, 2017.  He was placed on paid administrative leave in October 2017 when the first accusation went public.  This makes JANE DOE one of his last victims in a time spanning from at least November 24, 2015 to October 6, 2017.[2]  Sheriff Gore said Deputy FISCHER was placed on unpaid administrative leave after the first of two criminal cases were filed against him on February 22, 2018.

40.     The COUNTY OF SAN DIEGO's policy/custom demonstrates it was deliberately indifferent to the rights of the victims because the deficiency in its system was obvious and the constitutional injury was likely to occur.  In fact, it was not only likely to occur, it actually did occur to at least 21 victims who were

---

[2] N.G. appears to be the last known victim according to criminal court records.  She was sexually assaulted between October 5, 2017 and October 6, 2017.

11

**COMPLAINT**

injured over a two year period. The COUNTY OF SAN DIEGO did nothing to investigate half of the victim's phone calls reporting Deputy FISCHER's conduct over a two year period. The COUNTY only took action after the claims came to into the public light. In fact, the San Diego County District Attorney's Office conducted an investigation and found enough evidence to file criminal charges against Defendant FISCHER before the sheriff's department came to any conclusions about the multiple complaints from his victims received by the San Diego Sheriff Department months before the district attorney's involvement.

41. As a result of the COUNTY OF SAN DIEGO's policy/custom of knowingly refusing to investigate, and refusing to even respond to more than one out of six complaints of officer misconduct, refusing to take action on K.P.'s May 4, 2016 complaint, refusing to take any action on its own regarding half of Deputy FISCHER's victims' reports to the COUNTY, JANE DOE has been harmed in an amount according to proof at the time of trial, including past and future mental and emotional pain and suffering, and emotional distress.

WHEREFORE plaintiff JANE DOE, prays for relief as follows:

1. General damages according to proof at the time of trial,
2. Special damages according to proof at the time of trial,
3. Attorney fees pursuant to 42 U.S.C. § 1988,
4. Punitive damages against RICHARD FISCHER,
5. Costs of suit incurred herein and interest, and
6. Any further relief that this Court deems just and appropriate.

DATED: August 29, 2019           THE GILLILAND FIRM

s/ Douglas S. Gilliland
Douglas S. Gilliland, Esq., Attorneys for Plaintiff JANE DOE
doug@thegillilandfirm.com